IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-00191-MSK-NYW

LINDA SCHLUMBRECHT-MUNIZ, M.D.,

        Plaintiff,

v.

STEAMBOAT SKI & RESORT CORPORATION, a Delaware Corporation d/b/a
STEAMBOAT,

        Defendant.

---

## RECOMMENDATION REGARDING DEFENDANT'S MOTION TO DISMISS

---

Magistrate Judge Wang

This matter comes before the court on Defendant Steamboat Ski & Resort Corporation's ("Steamboat") Motion to Dismiss [#14], filed on April 7, 2014. Steamboat seeks to dismiss the lawsuit filed by Plaintiff Dr. Linda Schlumbrecht-Muniz ("Plaintiff" or "Dr. Muniz") on January 23, 2014. The Motion was referred to this Magistrate Judge pursuant to the Order of Reference dated February 6, 2014 [#9] and memorandum dated May 6, 2014 [#24]. After carefully considering the Motion and related briefing, the entire case file, and the applicable case law, I respectfully RECOMMEND that Defendant's Motion to Dismiss be GRANTED.

### BACKGROUND AND PROCEDURAL HISTORY

Dr. Muniz filed this lawsuit asserting claims of negligence, negligence *per se*, and *respondeat superior* against Steamboat and seeking damages for injuries incurred while skiing at Steamboat Ski Resort. The court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

The following is a statement of Dr. Muniz' allegations as pled.  On January 24, 2012, Dr. Muniz was skiing on a marked and open ski run known as "Bashor Bowl." [#7 at ¶ 7].  Earlier in the day, a Steamboat employee had parked a snowmobile at the bottom of Bashor Bowl.  The vehicle was not visible for 100 feet.  [*Id.* at ¶ 9].  Dr. Muniz collided with the snowmobile and sustained personal injuries for which she now seeks compensatory damages.

Dr. Muniz filed her original Complaint on January 23, 2014, naming Steamboat and IRCE, Inc. a/k/a Intrawest Resorts, Inc ("IRCE).  [#1].  She amended her Complaint on February 3, 2014 to dismiss IRCE as a defendant.  [#7].  Steamboat waived service on February 5, 2014 [#10], filed the pending Motion to Dismiss on April 7, 2014 [#14], and filed a Motion to Stay Discovery on April 25, 2014.  [#16].  Plaintiff filed a Response to the Motion to Dismiss on April 28, 2014 [#17], and filed a Response to the Motion to Stay on May 5, 2014 [#19], stating she did not object to the request.  Steamboat filed a Reply in support of its Motion to Dismiss on May 12, 2014.  [#26].  On October 28, 2014, the court denied Steamboat's Motion to Stay. [#36].

Steamboat filed a Motion for Summary Judgment on January 5, 2015.  [#41].  Dr. Muniz filed her Response on January 26, 2015 [#45], and Steamboat filed its Reply on February 9, 2015.  [#47].  This action was reassigned to this Magistrate Judge the same day.  [#46].

## STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a court to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive such a motion, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  In deciding a motion under Rule 12(b)(6), the court views factual allegations in the

light most favorable to the plaintiff.  *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).

However, a plaintiff may not rely on mere labels or conclusions to carry its burden, "and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  As the Tenth Circuit explained in *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007), "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."  The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed."  *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## ANALYSIS

Steamboat argues that Dr. Muniz fails to state a claim upon which relief could be granted because, pursuant to the Colorado Ski Safety Act ("Ski Safety Act" or "Act"), C.R.S. § 33-44-101 to 114, it is immune from any claim for damages resulting from "the inherent dangers and risks of skiing," and Plaintiff's collision with a parked snowmobile qualifies as such.  Steamboat further argues that Dr. Muniz failed to plead a violation of any section of the Act, and that her *respondeat superior* claim must fail as derivative of the other two Claims.

The Ski Safety Act sets forth safety standards for the operation of ski areas and for the skiers using them, and defines the rights and liabilities existing between the skier and the ski area operator. *See* Colo. Rev. Stat. § 33-44-102. *See also Doering ex el Barrett v. Copper Mountain*,

259 F.3d 1202, 1212 (10th Cir. 2001).[1]  "Notwithstanding any judicial decision or any other law or statute to the contrary, ... no skier may make any claim against or recover from any ski area operator for injury resulting from any of the inherent dangers and risks of skiing."  Colo. Rev. Stat. § 33-44-112.  The definition of "inherent dangers and risks of skiing" specifically excludes "the negligence of a ski operator as set forth in section 33-44-104(2)," which provides that "a ski operator's violation of any requirement under the Ski Safety Act that results in injury to any person constitutes negligence."  Colo. Rev. Stat. §§ 33-44-104(2), -112.  Accordingly, Steamboat may be liable under one of two theories: a skier may recover if her injury resulted from an occurrence not considered an inherent danger or risk of skiing; or a skier may recover if the ski operator violated a provision of the Act and that violation resulted in injury.  *See Kumar v. Copper Mountain, Inc.*, 431 Fed. Appx. 737, 738 (10th Cir. 2011).  A claim arising under the first instance would fall outside of the Act and be governed by common-law negligence principles.  *Id.* (citing *Graven v. Vail Assocs.,* 909 P.2d 514, 520 (1995), partially abrogated on other grounds by Colo. Rev. Stat. § 33–44–112).  Dr. Muniz asserts claims under both theories of liability.

A.     **Negligence**

The Ski Safety Act defines "inherent dangers and risks of skiing" to mean:

those dangers or conditions that are part of the sport of skiing, including changing weather conditions; snow conditions as they exist or may change, such as ice, hard pack, powder, packed powder, wind pack, corn, crust, slush, cut-up snow, and machine-made snow; surface or subsurface conditions such as bare spots, forest growth, rocks, stumps, streambeds, cliffs, extreme terrain, and trees, or other natural objects, and collisions with such natural objects; impact with lift towers, signs, posts, fences or enclosures, hydrants, water pipes, or other man-made structures and their components; variations in steepness or terrain, whether natural or as a result of slope design, snowmaking or grooming operations,

---

[1] No one contests that Steamboat is a "ski area operator" and Plaintiff is a "skier" as defined in the Act.

> including but not limited to roads, freestyle terrain, jumps, and catwalks or other terrain modifications; collisions with other skiers; and the failure of skiers to ski within their own abilities.

Colo. Rev. Stat. § 33-44-103(3.5). Steamboat argues that the list presented in this section is not exhaustive, and should be read to include collisions with snowmobiles.

In *Graven v. Vail Associates, Inc.*, the Colorado Supreme Court reserved the issue of whether the list in section 33-44-103(3.5) is exclusive, though indicated that "[t]he word 'include' [ ] ordinarily signifies extension or enlargement and is not definitionally equivalent to the word 'mean.'" *Graven*, 909 P.2d at 519 n. 4. *See also Colo. Common Cause v. Meyer,* 758 P.2d 153, 163–64 (Colo. 1988) (en banc) ("The word 'includes' has been found by the overwhelming majority of jurisdictions to be a term of extension or enlargement when used in a statutory definition. The use of 'includes' in the statutory definition of 'political committee,' therefore, connotes that something else is encompassed by the definition beyond what was previously covered by the immediately preceding language.") (citations omitted).

More recently, the Colorado Court of Appeals held in *Fleury v. Intrawest Winter Park Operations Corp.*, that the list of inherent dangers contained in section 33-44-103(3.5) is not exhaustive. --- P.3d ----, 2014 WL 554237 (Colo. App. February 13, 2014). In *Fleury*, the court considered whether an avalanche that had caused the death of appellant's husband qualified as an "inherent danger or risk of skiing" even though that specific hazard is not listed in section 33-44-103(3.5). By giving effect to the plain meaning of the words and reviewing the legislative intent surrounding the Act, the court concluded that an avalanche fits into the definition of inherent danger or risk. *Id.* at *2-3. First, the court reasoned that section 33-44-103(3.5) uses the word "including," which indicates the list "is illustrative and not, as [appellant] argues, confined to the identified dangers." *Id.* at *2 ("Because the General Assembly typically uses "include" as a

word of extension or enlargement, listing examples in a statutory definition does not restrict the term's meaning."). (citations omitted). Next, the court considered the Colorado General Assembly's decision in 2004 to alter the definition of inherent dangers and risks of skiing. The revision changed "dangers or conditions which are an integral part of the sport of skiing" to "dangers or conditions that are part of the sport of skiing," thereby broadening the types of inherent risks covered by the Act and decreasing the liability of ski area operators. *Id.* at \*4 (citing Ch. 341, sec. 1, § 33–44–103(3.5), 2004 Colo. Sess. Laws. 1393). Finally, the court determined that an avalanche, "a large mass of snow, ice, earth, rock, or other material in swift motion down a mountainside or over a precipice" fits one or more of the statutory examples of inherent dangers or risks of skiing. *Id.* at 3 (citing *Kumar*, 431 Fed. Appx. at 738) (resolving that cornice falls "within the section relating to snow conditions as they exist or change, or the provision covering variations in steepness or terrain."). In concluding, the *Fleury* court stated, "the inclusion of an avalanche as an inherent danger or risk of skiing is consistent with the General Assembly's intent, as evidenced by the evolution of the Act." *Id.* Justice Navarro concurred in the ruling and Justice J. Jones filed a dissent.[2] One month following that decision, a court in this District noted in passing that "the Act's list of 'inherent dangers,' [ ] is non-exclusive." *Bazarewski v. Vail Corp.*, 23 F. Supp. 3d 1327, 1331 (D. Colo. 2014) (determining that resort was immune under the Act for damages resulting from injuries caused by impact of

---

[2] On December 8, 2014, the Supreme Court of Colorado granted a Petition for Writ of Certiorari as to whether, for the purposes of the Ski Safety Act, "the term inherent dangers and risk of skiing, as defined in section 33-44-103(3.5), C.R.S. (2014) encompasses avalanches that occur within the bounds of a ski resort, in areas open to skiers at the time in question." *Fleury v. Intrawest Winter Park Operations Corp.*, No. 14SC224, 2014 WL 6883934 (Colo. December 8, 2014).

rubber tube against rubber deceleration mats because deceleration mats are an inherent part of the snow tubing activity) (emphasis in original).

This court finds the reasoning of *Fleury* persuasive and that the list in section 33-44-103(3.5) is not exhaustive.  I am also persuaded that the presence of a parked snow mobile at the end of a ski run is an inherent risk of the sport of skiing.  While Steamboat cites *Fleury* for that court's description of the "common understanding of a 'danger,'" and analogizes the presence of a snowmobile to cornices, avalanches, and rubber deceleration mats for tubing [#14 at 5], I find that a parked snowmobile is not analogous to those examples because a snowmobile is not part of the on-course terrain of the sport.  However, the other provisions of the Act are more instructive.  For instance, as Steamboat notes, section 33-44-109(4) of the Ski Safety Act provides, in pertinent part: "Each skier shall stay clear of snow-grooming equipment, *all vehicles*, lift towers, signs, and any other equipment on the ski slopes and trails." Colo. Rev. Stat. § 33-44-109(4).  This section demonstrates the General Assembly's intent to hold the skier, rather than the ski operator, responsible for avoiding vehicles on the ski slopes and trails.   And section 33-44-108(3) mandates that snowmobiles operating on ski slopes and trails be equipped with certain visibility-related accessories.  These provisions indicate that the General Assembly expects that snowmobiles are present in ski areas – both on the slopes and trails – and pose a risk to skiers.

Similarly, this court has previously held that plaintiff's collision with a snowmobile while skiing was included as a "risk of skiing/riding." *Robinette v. Aspen Skiing Co., LLC*, 2009 WL 1108093, *2 (D. Colo. 2009), *aff'd* 363 Fed. Appx. 547 (10th Cir. 2010).  In *Robinette*, Chief Judge Krieger held that "the specific risk of colliding with a snowmobile being operated by a ski resort employee is necessarily within the 'risks of skiing/riding,'" and cited section 33-44-108(3)

for support that skier-snowmobile collisions are a known potential risk.  *Id*. at \*3.  While the court was interpreting a particular ski resort release rather than the statute, the analysis remains the same.  The fact that the snowmobile was parked near the end of the ski run, rather than moving, also does not alter conclusion.

Accordingly, I find that Plaintiff has failed to state a claim for negligence that is plausible on its face, and I recommend granting Steamboat's Motion to Dismiss as to this claim.

**B.      Negligence Per Se**

Steamboat argues that Plaintiff's Second Claim should be dismissed pursuant to Fed. R. Civ. P. 8(a)(2) for failure to specify the provision of the Act that Steamboat allegedly violated. Steamboat further argues that if Plaintiff intended to claim a violation of section 33-44-107(7), that general provision is inapplicable because section 33-44-108(3) of the Act pertains specifically to snowmobiles.

Plaintiff clarifies in her Response that the negligence *per se* claim is for violation of section 33-44-108(3), which requires snowmobiles operated "on the ski slopes or trails of a ski area" to be equipped with "[o]ne lighted headlamp, one lighted red tail lamp, a brake system maintained in operable condition, and a fluorescent flag at least forty square inches mounted at least six feet above the bottom of the tracks."  Colo. Rev. Stat. § 33-44-108(3).  Plaintiff also posits that because the snowmobile was parked, Steamboat is in violation of section 33-44-107(7), which requires that man-made structures be visible from at least 100 feet away.  *See* Colo. Rev. Stat. § 33-44-107(7)).  Plaintiff offers that a question exists as to whether a parked snowmobile is governed under section 33-44-108(3), requiring it to have an illuminated head lamp or trail lamp, or under section 33-44-107(7), requiring that it be visible from 100 feet.

Neither approach leads Plaintiff to her desired result.  Steamboat correctly asserts that if the snowmobile is characterized as a man-made object, Plaintiff's impact with it was an inherent danger and risk pursuant to section 33-44-103(3.5), and Steamboat is immune to liability for the resulting injuries.  *See Bayer v. Crested Butte Mountain Resort, Inc.*, 960 P.2d 70, 74 (Colo. 1998) (holding that inherent risks of skiing include "collisions with natural and man-made objects.").  If Plaintiff intends for her Claim to proceed under the theory that Steamboat violated section 33-44-108(3) by failing to equip the snowmobile with the proper lighting, she did not plead that the parked vehicle lacked the required items, and mentions only in passing in her Response that the vehicle "did not have an illuminated head lamp or trail lamp because it was not operating."  [#17 at 10].  Indeed, there is no section of the Act that requires any marking of the stationary snowmobile.

## C.     Respondeat Superior

Steamboat argues that Dr. Muniz's Third Claim should be dismissed as derivative of her other Claims.  An employer may be held liable under the doctrine of *respondeat superior* if damage results from the employee's actions that were taken on behalf of the employer.  *Raleigh v. Performance Plumbing and Heating*, 130 P.3d 1011, 1019 (Colo. 2006) (citing *Grease Monkey Int'l, Inc. v. Montoya,* 904 P.2d 468, 473 (Colo. 1995)).  Plaintiff has alleged that the Steamboat employee was acting within the scope of her employment when she parked the snowmobile at the base of Bashor Bowl.  *See id.* ("Under the theory of respondeat superior, the question of whether an employee is acting within the scope of the employment is a question of fact") (citation omitted).  Because I have found that a collision with a snowmobile located on a ski slope is an inherent danger or risk of skiing, Dr. Muniz's claim for *respondeat superior* must also fail.

9

## CONCLUSION

For the foregoing reasons, I respectfully RECOMMEND that Defendant Steamboat's

Motion to Dismiss (Doc. #14) be GRANTED.[3]

DATED: February 23, 2015                    BY THE COURT:


                                            s/Nina Y. Wang_____
                                            United States Magistrate Judge

---

[3] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc*., 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).