**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger**

Civil Action No. 14-cv-00191-MSK-NYW

**LINDA SCHLUMBRECHT-MUNIZ, M.D.,**

      **Plaintiff,**

**v.**

**STEAMBOAT SKI AND RESORT CORPORATION, a Delaware corporation doing
business as Steamboat,**

      **Defendant.**

_____

**OPINION AND ORDER DENYING MOTION TO DISMISS**
_____

**THIS MATTER** comes before the Court on the Magistrate Judge's Recommendation

(**#48**) that the Court grant the Defendant's Motion to Dismiss (**#14**). The Plaintiff, Linda

Schlumbrecht-Muniz (Dr. Muniz), filed timely Objections (**#49**) to the Recommendation.

## FACTS

The following facts are derived from the allegations set forth in the Amended Complaint

(**#7**).

Dr. Muniz is a resident of Florida. The Defendant Steamboat Ski and Resort Corporation

was a Delaware corporation that was doing business as "Steamboat" in Steamboat Springs,

Colorado.

On January 24, 2012, Dr. Muniz was skiing on a marked and open ski run near the

bottom of Bashor Bowl at Steamboat. Although Dr. Muniz kept a proper lookout and skied in a

safe fashion, she collided with a snowmobile that was parked at the bottom of the Bashor Bowl

run. The snowmobile was parked in this location by a Steamboat employee, Maggie Griffin,

earlier that day. The snowmobile was not visible for a distance of 100 feet for skiers on the mountain. As a result of the collision, Dr. Muniz suffered severe, permanent, and debilitating injuries.

In her Amended Complaint, Dr. Muniz asserts three claims against Steamboat, all under Colorado law: (1) negligence, (2) negligence per se, and (3) *respondeat superior*.[1] Steamboat filed a Motion to Dismiss, arguing that: (1) Dr. Muniz's negligence claim is barred by C.R.S. 33-44-112, which provides immunity to ski area operators from any claims resulting from the inherent dangers and risks of skiing; (2) Dr. Muniz failed to allege sufficient facts to state a claim for a violation of the Colorado Ski Safety Act, C.R.S. § 33-44-101; and (3), as a result, Dr. Muniz's *respondeat superior* claim fails because it is derivative of the first two claims. The Court referred the motion to the Magistrate Judge for a Recommendation.

On February 23, 2015, the Magistrate Judge recommended that the Court grant Steamboat's motion and dismiss all three of Dr. Muniz's claims. Dr. Muniz filed timely objections to the Magistrate Judge's Recommendation. Dr. Muniz objects to the Magistrate Judge's conclusions that (1) colliding with a snowmobile is an inherent risk or danger of skiing and (2) Dr. Muniz failed to adequately plead a violation of C.R.S. §§ 33-44-107, 108.

## STANDARD OF REVIEW

When a magistrate judge issues a recommendation on a dispositive motion, the parties may file specific, written objections within fourteen days after being served with a copy of the recommendation.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The district court reviews *de novo* determination those portions of the recommendation to which a timely and specific objection is made.  *See U.S. v. One Parcel of Real Prop. Known as 2121 E. 30th St.,* 73 F.3d

---

[1] The Court exercises diversity jurisdiction pursuant to 28 U.S.C. § 1332.

1057, 1060 (10th Cir. 1996).  Because all of the legal determinations made by the Magistrate

Judge have been challenged, the Court considers the Motion to Dismiss in its entirety.

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all

well-plead allegations in the Complaint as true and view those allegations in the light most

favorable to the nonmoving party.  *Stidham v. Peace Officer Standards and Training*, 265 F.3d

1144, 1149 (10th Cir. 2001), *quoting Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d

1226, 1236 (10th Cir. 1999).  The Court must limit its consideration to the four corners of the

Complaint, any documents attached thereto, and any external documents that are referenced in

the Complaint and whose accuracy is not in dispute.  *Oxendine v. Kaplan*, 241 F.3d 1272, 1275

(10th Cir. 2001); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).

A claim is subject to dismissal if it fails to state a claim for relief that is "plausible on its

face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  To make such an assessment, the Court

first discards those averments in the Complaint that are merely legal conclusions or "threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at

1949-50.  The Court takes the remaining, well-pled factual contentions, treats them as true, and

ascertains whether those facts support a claim that is "plausible" or whether the claim being

asserted is merely "conceivable" or "possible" under the facts alleged. *Id.* at 1950-51.  What is

required to reach the level of "plausibility" varies from context to context, but generally,

allegations that are "so general that they encompass a wide swath of conduct, much of it

innocent," will not be sufficient. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir.

2012).

## ANALYSIS

   a. **Negligence**

Steamboat argues that the Amended Complaint fails to state a claim for negligence because Dr. Muniz's negligence claim is barred by the Ski Safety Act.

The Ski Safety Act identifies several specific duties that ski area operators owe to skiers. *See* C.R.S. §§ 33-44-106 to 108. A breach of these duties constitutes negligence. C.R.S. § 33-44-104(2). Unless a ski area operator violated a provision of the Ski Safety Act, the statute precludes a ski area operator from being sued by a skier whose injuries resulted from any of the "inherent dangers and risks of skiing." C.R.S. § 33-44-112. The statute defines the "inherent dangers and risks of skiing" as:

> those dangers or conditions that are part of the sport of skiing, including changing weather conditions; snow conditions as they exist or may change, such as ice, hard pack, powder, packed powder, wind pack, corn, crust, slush, cut-up snow, and machine-made snow; surface or subsurface conditions such as bare spots, forest growth, rocks, stumps, streambeds, cliffs, extreme terrain, and trees, or other natural objects, and collisions with such natural objects; impact with lift towers, signs, posts, fences or enclosures, hydrants, water pipes, or other man-made structures and their components; variations in steepness or terrain, whether natural or as a result of slope design, snowmaking or grooming operations, including but not limited to roads, freestyle terrain, jumps, and catwalks or other terrain modifications; collisions with other skiers; and the failure of skiers to ski within their own abilities.

C.R.S. § 33-44- 103(3.5).

Steamboat argues that the Ski Safety Act precludes Dr. Muniz's negligence claim because collisions with snowmobiles are an inherent risk and danger of skiing. In support of its position, Steamboat argues that the list in C.R.S. § 33-44- 103(3.5) is not exhaustive and that collisions with snowmobiles are an inherent risk and danger of skiing. Steamboat relies, in part, on a recent decision by the Colorado Court of Appeals, which held that an avalanche is an inherent risk or danger of skiing despite not being included in the enumerated list found in C.R.S. § 33-44-103(3.5). *See Fluery v. IntraWest Winter Park Operations Corporation*, 2014

COA 13, __ P.3d ___, 2014 WL 554237, *pet. for cert. pending* (2014 SC 224).  In addition, Steamboat asserts that snowmobiles are man-made structures and are encompassed in the provision because it lists "impact with . . . other man-made structures" as an inherent risk and danger of skiing. C.R.S. § 33-44-103(3.5).

However, whether an occurrence or condition is an inherent danger or risk of skiing is not always a question of law. *See Doering ex. rel. Barrett v. Copper Mountain, Inc.*, 259 F.3d 1202, 1214 n.6 (10th Cir. 2001); *Graven v. Vail Associates, Inc.*, 909 P.2d 514, 520 (Colo. 1995). In other words, not all dangers that may be encountered on the ski slopes are inherent and integral to the sport of skiing. *See Graven*, 909 P.3d at 520. For example, in *Graven* the Colorado Supreme Court concluded that the terrain that precipitated the plaintiff's injuries was not necessarily an inherent risk and danger of skiing, even though C.R.S. § 33-44-103(3.5) explicitly lists "variations in steepness or terrain." *Id.* There, the plaintiff's description of the terrain alleged a situation so dangerous or hazardous that it would render the ski operators duties in the Ski Safety Act as essentially meaningless. *Id.*

Accordingly, even if the Court accepts Steamboat's arguments that collisions with snowmobiles are generally an inherent risk and danger of skiing, that does not mean that the circumstances surrounding the collision at issue in this case fall within the definition of inherent dangers and risks of skiing. In other words, Dr. Muniz's negligence claim can survive Steamboat's Motion to Dismiss so long as the Amended Complaint alleges facts that support a plausible claim that Dr. Muniz's collision with the snowmobile resulted from circumstances not inherent and integral to the sport of skiing. Here, the Amended Complaint alleges that the snowmobile was parked in a dangerous location at the bottom of ski run. These facts are sufficient to support a plausible claim that the snowmobile's location was not inherent and

integral to the sport of skiing and created a situation that was so hazardous that the resulting collision was not an inherent risk or danger of skiing. Thus, the allegations in the Amended Complaint are sufficient to state a claim for negligence.

    **b. Negligence *per se***

Steamboat argues that Dr. Muniz's negligence *per se* claim should be dismissed because the Amended Complaint fails to adequately plead a violation of the Ski Safety Act. Specifically, Steamboat argues that the Amended Complaint does not specify the provision of the Ski Safety Act allegedly violated by Steamboat.

In her response, Dr. Muniz argues that Steamboat violated two specific provisions of the Ski Safety Act. First, she asserts that Steamboat violated C.R.S. § 33-44-108(3), which requires ski area operators to equip operating snowmobiles with certain visibility features. Second, she argues that Steamboat violated C.R.S. § 33-44-107(7), which requires ski area operators to "mark hydrants, water pipes, and all other man-made structures on slopes and trails which are not readily visible to skiers under conditions of ordinary visibility from a distance of at least one hundred feet."

The Court addresses first whether the Amended Complaint pleads adequate facts to support a claim under C.R.S. § 33-44-108(3). That provision requires that "[a]ll snowmobiles operated on the ski slopes or trails of a ski area shall be equipped with at least the following: One lighted headlamp, one lighted red tail lamp, a brake system maintained in operable condition, and a fluorescent flag at least forty square inches mounted at least six feet above the bottom of the tracks." However, there are no allegations in Amended Complaint about whether or not the snowmobile was outfitted with such equipment. Thus, the Amended Complaint does not contain sufficient facts to support a claim that Steamboat violated C.R.S. § 33-44-108(3).

The Court considers next whether the Amended Complaint pleads facts adequate to support a claim under C.R.S. § 33-44-107(7). That provision requires ski area operators to mark man-made structures in way that makes them visible within one hundred feet. Dr. Muniz's Amended Complaint alleges that the snowmobile she collided with while skiing was not visible within one hundred feet, which is sufficient to state a claim that Steamboat violated C.R.S. § 33-44-107(7).

However, Steamboat argues that C.R.S. § 33-44-107(7) is inapplicable to snowmobiles as a matter of law. Specifically, Steamboat argues that the provision of the Ski Safety Act specific to snowmobiles (C.R.S. § 33-44-108(3)) controls over the more general provision regarding man-made structures (C.R.S. § 33-44-107(7)).  Where specific and general statutes conflict, the provisions of the specific statute prevail. *See,e.g.*, *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S.Ct. 2065, 2071 (2012); *Martin v. People*, 27 P.3d 846, 852 (Colo. 2001). However, general and specific provisions "shall be construed, if possible, so that effect is given to both." C.R.S. § 2-4-205. The specific provision controls, only if the two provisions are irreconcilable. C.R.S. § 2-4-205.

Here, C.R.S. §§ 33-44-107(7) and -108 are not irreconcilable and can be construed so that each provision is given effect. Section 33-44-107(7) requires ski area operators to mark man-made structures that are not readily visible from a distance of one hundred feet. It specifically states that "[a]ny type of marker shall be sufficient, . . . if the marker is visible from a distance of one hundred feet." C.R.S. § 33-44-107(7). Section 33-44-108(3), on the other hand, requires that snowmobiles operated on the ski slopes or trails of a ski area to be equipped with a headlamp, a tail lamp, a brake system, and a fluorescent flag. Although the provision prescribes certain types of visibility features, it does not modify the general requirement that man-made structures be

visible within one hundred feet. Thus, C.R.S. § 33-44-107(7) is not inapplicable to snowmobiles as a matter of law.

## CONCLUSION

For the foregoing reasons, the Court declines to adopt the Magistrate Judge's Recommendation (**#48**). The Court **DENIES** the Defendant's Motion to Dismiss (**#14**).

Dated this 11th day of March, 2015.

**BY THE COURT:**

Marcia S. Krieger
Chief United States District Judge