**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger**

Civil Action No. 14-cv-00191-MSK-NYW

**LINDA SCHLUMBRECHT-MUNIZ, M.D.,**

      **Plaintiff,**

v.

**STEAMBOAT SKI AND RESORT CORPORATION,**

      **Defendant.**

---

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
MOTION FOR SUMMARY JUDGMENT**

---

      **THIS MATTER** comes before the Court on the Defendant's Motion for Summary

Judgment (**#41**), the Plaintiff's Response (**#45**), and the Defendant's Reply (**#47**).

### I.  Material Facts

      The Court has reviewed the record and submissions of the parties and finds the following

facts to be undisputed, or if disputed, resolves them most favorably to the non-movant.

      The Plaintiff Linda Schlumbrecht-Muniz, M.D., was a member of the Sarasota, Florida

Ski Team.  She travelled to Steamboat Springs Ski Resort with the ski team to participate in

NASTAR ski races.[1]  Prior to participating in the ski races, Dr. Muniz registered with NASTAR

by filling out and signing a registration form that contained an exculpatory clause and paid a

---

[1] According to the NASTAR.com website, NASTAR stands for NAtional STAndard Race and is a national ski race program.  Participants compete within their age and gender groups based on a standardized scoring program (a handicap system), which provides them the ability to compete and compare scores regardless of when and where they race.  The NASTAR ski program has several sponsors, including Nature Valley and the U.S. Ski Team.

registration fee. She also purchased a lift ticket from the Defendant, Steamboat Ski and Resort Corporation.

On January 24, 2012, Dr. Muniz was present to participate in the ski races and to ski recreationally. The race course was set up on the Bashor Trail, which Dr. Muniz accessed via the Bashor Lift. After finishing her second race and exiting the race course, she skied down the Bashor Trail and headed toward the lift. She had intended to ski past the lift to a picnic area to meet up with other racers, but on her way Dr. Muniz collided with a snowmobile that was parked near the lift. Dr. Muniz sustained serious injuries as a result of the collision.

Dr. Muniz asserts two claims against the Defendant, Steamboat: (1) common-law negligence by the Defendant's employee in parking the snowmobile in a dangerous, high-traffic area,[2] and (2) negligence per se under the Colorado Ski Safety Act (SSA), Colo. Rev. Stat. § 33-44-107(7),[3] by failing to mark and pad the snowmobile.

The Defendant moves for summary judgment on both claims. It argues that (1) both claims are barred by the exculpatory clause contained in the NASTAR participation agreement; (2) the common-law negligence claim is barred as a matter of law by Colo. Rev. Stat. § 33-44-112; and (3) the claim of negligence per se for violation of the SSA fails because the statute is inapplicable and, if it is applicable, Dr. Muniz cannot present sufficient evidence for a prima facie claim.

---

[2] Although the Amended Complaint (**#7**) lists a third claim for relief titled "Respondeat Superior," the Court recognizes that the Plaintiff simply seeks to hold the Defendant liable for the alleged negligent conduct of its employee.

[3] The Amended Complaint does not specify which section of the SSA the Defendant allegedly violated. In response to the Defendant's Motion to Dismiss (**#14**), the Plaintiff asserted that the Defendant had violated C.R.S. § 33-44-107(7) and/or § 33-44-108(3). The Court found, however, that the complaint did not allege sufficient facts to state a claim for violation of C.R.S. § 33-44-108(3) and dismissed the Plaintiff's claim of negligence per se for violation of that section. *See* Docket #50. Thus, the remaining claim for negligence per se pertains only to an alleged violation of C.R.S. § 33-44-107(7).

## II.  Standard of Review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary.  *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Substantive law governs which facts are material and what issues must be determined.  It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof, and identifies the party with the burden of proof.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989).  A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and in opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party.  *See Anderson*, 477 U.S. at 248.  When considering a motion for summary judgment, the Court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial.  *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence.  *See* Fed. R. Civ. P. 56(c)(1)(A).  Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute.  *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999).  If there is a genuine dispute as to a material fact, a trial is required.  If there is no genuine dispute as to any material

fact, no trial is required. The Court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, then the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

### III. Analysis

### A. Exculpatory Clause

The Defendant first argues that it is entitled to summary judgment on both of Dr. Muniz's claims based on the exculpatory agreement contained in the NASTAR participation agreement signed by Dr. Muniz. This is an affirmative defense, on which the Defendant bears the burden of proof.

In relevant part, the agreement provides:

> In exchange for being permitted to participate in NASTAR events (the "Event"), I agree to the following:
>
> . . . .
>
> I acknowledge that participating in the Event poses a RISK OF PERSONAL INJURY to me and damage to my property, and I knowingly and voluntarily ASSUME ALL RISKS associated with my involvement in the Event and the risk of injury caused by the condition of any property, facilities, or equipment used during the Event, whether foreseeable or unforeseeable. I hereby release and agree not to sue NASTAR, Bonnier Mountain Group, Bonnier Active Media, Inc., the applicable sponsoring ski area where the Event is held, and the Event sponsors, along with their parent companies, affiliates, successors, assigns, employees, agents, or other volunteers, and insurers of any of the above (collectively, the

"Releasees") for any injuries, losses, damages, claims, liabilities, or expenses that are caused or alleged to be caused by the Releasees, their negligent or reckless acts or omissions, hazards that are normally associated with participating in the Event, or the condition of the property, facilities, or equipment used for the Event.

. . . .

The Defendant argues that the exculpatory clause is valid and enforceable under the four-factor test set forth in *Jones v. Dressel*, 623 P.2d 370, 376 (Colo. 1981), and thus, Dr. Muniz's claims are barred as a matter of law.

The determination of the sufficiency and validity of an exculpatory agreement is a question of law for the Court. *Jones*, 623 P.2d at 376. Generally, exculpatory agreements are recognized under Colorado law, but are construed narrowly and "closely scrutinized" to make sure the agreement was fairly entered into and that the intention of the parties is expressed in clear and unambiguous language. *Id.* In addition, the terms of exculpatory agreements are construed strictly against the drafter. *Heil Valley Ranch, Inc. v. Simkin*, 784 P.2d 781, 784 (Colo. 1990). In determining the validity of an exculpatory agreement, *Jones* requires the Court to consider the following factors: (1) whether the service provided involves a duty to the public; (2) the nature of the service provided; (3) whether the agreement was fairly entered into; and (4) whether the agreement is clear and unambiguous. *Jones*, 623 P.2d at 376; *see also B& B Livery, Inc. v. Riehl*, 960 P.2d 134, 136 (Colo. 1998).

Dr. Muniz implicitly concedes that the agreement satisfies the first three criteria, challenging only whether it is clear and unambiguous. She argues that the agreement is ambiguous because its scope is unclear. Specifically, she argues that the agreement does not specify whether the waiver of liability extends to claims for injuries that occur outside of her

participation in "the Event," *i.e.* the NASTAR ski race.[4]  Dr. Muniz contends that the more

reasonable interpretation of the agreement is that it is limited to racing activities during the

NASTAR ski event, and that because the collision occurred outside of the race course there is no

enforceable waiver.  The Defendant responds that the agreement plainly covers injuries that

occur outside of the ski race.  The Defendant argues that Dr. Muniz's claims clearly fall within

the agreement because she alleges that the Defendant "caused" her injuries and because she was

skiing on the trail used to access the race course.

    The parties' disagreement highlights a difference between clarity in the agreement's

expression of intent to extinguish liability and clarity in the scope of the conduct or claims

affected.  The *Jones v. Dressel* test focuses on the clarity of the parties' intent to extinguish

liability.  For that purpose, Colorado courts examine the actual language of the agreement for

legal jargon, length and complication, and any likelihood of confusion or failure of a party to

recognize the full extent of the release provisions.  *See Heil Valley Ranch v. Simkin*, 784 P.2d

781, 785 (Colo. 1989); *Chadwick v. Colt Ross Outfitters, Inc.*, 10 P.3d 465, 467 (Colo. 2004).

Specific terms such as "negligence" or "breach of warranty" are not required to shield a party

from liability.  What matters is whether the intent of the parties was to extinguish liability was

clearly and unambiguously expressed.  *Heil Valley Ranch*, 784 P.2d at 785.

    With this focus, the Court finds that the agreement clearly and unambiguously expresses

the parties' intent to release the Defendant from liability for certain claims.  The agreement is not

particularly long, a total of seven paragraphs, nor is it riddled with confusing language or legal

---

[4] Although unclear, it appears that Dr. Muniz also argues that the agreement is inapplicable because the Defendant was not a party to the agreement.  The Court is unpersuaded.  It is undisputed that the ski race was being held at the Defendant's ski resort.  The plain terms of the exculpatory agreement make clear that the "Releasees" include "the applicable sponsoring area where the Event is held" and its "employees."  Dr. Muniz makes no argument that the waiver could not, by its terms, include the Defendant.

jargon.  Stripped down to its operative terms, the release/waiver provides that a signatory releases the Defendant from liability "for any injuries . . . that are caused or alleged to be caused by [the Defendant], [its] negligent or reckless acts or omissions, hazards that are normally associated with participating in the Event, or the condition of the property, facilities, or equipment used for the Event."  Clearly, such language expresses the intent to categorically bar claims arising from participation in "the Event."  In the context of the facts, here, the Court understands that "the Event" to be the ski race.

What is more difficult to interpret is what the parties intended by the language "normally associated with participating the Event."  This arguably defines the geographic and temporal scope of the release/waiver.  This phrase, when applied to claims brought against the "sponsoring ski area where the Event is held," might be understood to bar all claims for injuries to a race participant based on any injury that occurred anywhere at the sponsoring ski area before, after, or during the time of the race.  Alternatively, it could be so narrow as to be limited to injuries that occur only on the race course during the race.  Because such language is subject to differing interpretations, it is ambiguous.

Because the Defendant relies on the exculpatory agreement as an affirmative defense, it has the burden of proof to show that it bars Dr. Muniz's claims.  But the Defendant has presented no evidence of the parties' intent as to the scope of the agreement or law that categorically governs its interpretation.  As a consequence, the Defendant's Motion for Summary Judgment on that basis is denied.  At this juncture, the Court could enter summary judgment in favor of Dr. Muniz on this affirmative defense, but in light of need for a trial on other issues, the Court declines to do so.

## B.  Negligence

The Defendant contends that Dr. Muniz's claim for negligence is barred as a matter of law by the Ski Safety Act, § 33-44-112.  This, too, is an affirmative defense on which the Defendant bears the burden of proof.

The Ski Safety Act, § 33-44-112 provides, in relevant part, that "no skier may make any claim against or recover from any ski area operator" for injuries resulting from any of the "inherent dangers and risks of skiing."[5]  The Defendant argues that a collision with a snowmobile is an inherent danger and risk of skiing.

The Defendant has raised this argument on at least two prior occasions — in its Motion to Dismiss (**#14**) and its Motion for Reconsideration (**#51**).  On both occasions, the Court rejected the argument, concluding that whether a collision with a snowmobile is an inherent danger or risk of skiing is not necessarily a question of law because what is an inherent danger or risk of skiing is not limited to the circumstances specifically enumerated in the SSA.  *See* Docket Nos. 50, 54.  Having extensively addressed this legal argument on two previous occasions, the Court declines to address it for a third time.  Thus, the Court finds that the Defendant is not entitled to summary judgment on the claim for negligence.

## C.  Violation of the Colorado Ski Safety Act

Finally, the Defendant seeks a determination that Dr. Muniz cannot establish that it violated Colorado Ski Safety Act § 33-44-107(7).  The SSA identifies several specific duties that ski area operators owe to skiers.  *See* C.R.S. §§ 33-44-106 to -108.  A breach of these duties

---

[5] Section 33-44-103(3.5) defines "inherent dangers and risks of skiing" to include "those dangers or conditions that are part of the sport of skiing, including changing weather conditions; snow conditions as they exist or may change . . . ; surface or subsurface conditions . . . ; impact with lift towers, signs, posts, fences or enclosures, hydrants, water pipes, or other man-made structures and their components; variations in steepness or terrain, . . . ; collisions with other skiers; and the failure of skiers to ski within their own abilities."

constitutes negligence.  C.R.S. § 33-44-104.  As pertinent here, § 33-44-107(7) of the SSA

requires a ski area operator to mark "hydrants, water pipes, and all other man-made structures on

slopes and trails which are not readily visible to skiers under conditions of ordinary visibility

from a distance of one hundred feet" with a marker (such as a flag or sign), and to "adequately

and appropriately cover such obstructions with a shock-absorbent material that will lessen

injuries."  Section 33-44-103(3) defines "conditions of ordinary visibility" to mean "daylight . . .

in nonprecipitating weather."  Thus, as a threshold matter, to prove her claim Dr. Muniz must

establish that she collided with (1) a man-made structure that (2) was not visible from a distance

of 100 feet in daylight and nonprecipitating weather and (3) was not marked or padded as

required by § 107(7).  The Defendant contends that Dr. Muniz cannot establish the first two

elements.

First, the Defendant argues that § 107(7), which applies to man-made structures, cannot

apply to snowmobiles as a matter of law because the SSA contains a more specific provision

directed at snowmobiles, C.R.S. § 33-44-108(3).  The Defendant made this same argument in its

Motion to Dismiss (#14), which the Court addressed and rejected.  *See* Docket #50.  The Court

concluded that the statutes were not so inconsistent as to be irreconcilable and therefore it

declined to conclude that § 107(7) was inapplicable to snowmobiles as a matter of law.  The

Court does not revisit its prior ruling here.

However, the Defendant presents an alternative argument as to why Dr. Muniz cannot

prevail on her claim of negligence per se.  Assuming that a snowmobile is deemed to be a man-

made structure for purposes of § 107(7), Dr. Muniz must present evidence that the snowmobile

was not visible from a distance of 100 feet under conditions of ordinary visibility.  As noted,

"conditions of ordinary visibility" are defined as "daylight . . . in nonprecipitating weather."

Dr. Muniz has failed to do so.  Dr. Muniz relies solely on her own affidavit, in which she states that the snowmobile was not visible from 100 feet and was not visible to her until moments before she collided with it.  She states that at the time of the collision, it was lightly snowing and the visibility was moderate to poor.  Because the conditions Dr. Muniz describes do not reflect nonprecipitating weather, the evidence is insufficient to establish a violation of § 107(7).  Accordingly, the Defendant is entitled to summary judgment on the claim for negligence per se.

## IV.  Conclusion

For the forgoing reasons, the Defendant's Motion for Summary Judgment **(#41)** is **DENIED IN PART AND GRANTED IN PART**.  The Motion is granted with respect to the Plaintiff's claim of negligence per se for violation of Colo. Rev. Stat. § 33-44-107(7).  The Motion is denied in all other respects.  The only claim remaining in this case to be tried is the Plaintiff's claim for common-law negligence.

The parties are directed to begin preparation of a Proposed Final Pretrial Order, in accordance with the previously issued Trial Preparation Order (#23), and shall *jointly* contact chambers within 14 days of the date of this order for the purpose of scheduling a final pretrial conference.

Dated this 21st day of September, 2015.

BY THE COURT:

Marcia S. Krieger
Chief United States District Judge